1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHANNON G. HARTFIELD et al.,<br><br>Defendants. | CASE NO. 2:22-cr-00176-LK<br><br>ORDER CONTINUING TRIAL AND DENYING MOTION TO SEVER DEFENDANT |

This matter comes before the Court on Defendant Michael Keylon Miller-Jimerson's Motion to Continue Trial, Dkt. No. 177, and Defendant Shannon G. Hartfield's Motion to Sever Defendant, Dkt. No. 179. Mr. Miller-Jimerson and Mr. Hartfield are co-defendants set for trial on November 24, 2025, Dkt. No. 145, on various charges relating to alleged robberies of banks and marijuana dispensaries, Dkt. No. 146. On June 4, 2025, Mr. Miller-Jimerson was appointed new counsel, Dkt. Nos. 137, 143, and he now seeks a continuance of the trial date to May 4, 2026[1] so

---

[1] Mr. Miller-Jimerson's motion requests a trial date of May 11, 2026. Dkt. No. 177 at 1. The parties have since confirmed availability for an earlier trial date of May 4, 2026 via email to chambers on September 23, 2025. The Court will therefore refer to May 4, 2026 as the requested trial date.

that his attorney has adequate time to prepare, Dkt. No. 177 at 1–2. Mr. Hartfield opposes the requested continuance, Dkt. No. 178, and seeks to sever his trial if the Court grants a continuance, Dkt. No. 179. The Government opposes both continuance and severance, and instead wants the joint trial to begin as scheduled on November 24, 2025. Dkt. Nos. 188, 190.

For the reasons explained below, the Court GRANTS the Motion to Continue, Dkt. No. 177, and DENIES the Motion to Sever, Dkt. No. 179.

## I.     BACKGROUND

A detailed procedural history provides important context for both motions. On October 12, 2022, a federal grand jury indicted Mr. Hartfield on Conspiracy to Commit Bank Robbery, Bank Robbery (four counts), and Attempted Bank Robbery, and indicted Danesxy Ortega on Conspiracy to Commit Bank Robbery, Attempted Bank Robbery, Bank Robbery, and Carrying a Firearm During and in Relation to a Crime of Violence. Dkt. No. 1. Both Mr. Hartfield and Mr. Ortega were arraigned on October 18, 2022, and pleaded not guilty to all counts. Dkt. Nos. 11, 14. A jury trial was set for December 19, 2022. Dkt. Nos. 11, 14. On November 7, 2022, Mr. Hartfield and Mr. Ortega jointly requested a continuance of the trial date to July 10, 2023 because defense counsel needed "additional time . . . to review the materials and conduct appropriate investigation." Dkt. No. 24 at 2. Both Mr. Hartfield and Mr. Ortega filed speedy trial waivers in accordance with their request, Dkt. Nos. 25–26, and the Court granted the requested continuance on November 9, 2022, Dkt. No. 27.

On March 28, 2023, a grand jury returned a superseding indictment, adding charges against Mr. Hartfield and Mr. Ortega. Dkt. No. 31 at 5–6. Both again pleaded not guilty to all charges. Dkt. Nos. 37–38. On May 12, 2023, Mr. Hartfield filed a joint motion with Mr. Ortega to continue their trial date to January 16, 2024, largely due to the "volume of discovery," Dkt. No. 43 at 1–2,

1    and both filed speedy trial waivers aligned with their request, Dkt. Nos. 39, 44. The Court granted

2    the requested continuance on May 15, 2023. Dkt. No. 46.

3         On December 4, 2023, Mr. Hartfield filed a motion requesting that the trial date be further

4    continued to September 16, 2024 "due to the complexity of the case, volume of discovery and

5    number of incidents" and because the nature of the charges required "careful[] review." Dkt. No.

6    49 at 1–3. Mr. Hartfield stated that it was "simply not possible for [him] to be prepared for a trial"

7    given the circumstances, *id.* at 4, and he waived his speedy trial rights in alignment with his

8    request, Dkt. No. 48. Mr. Ortega joined in the motion, Dkt. No. 50,[2] and filed a speedy trial waiver

9    to that effect, Dkt. No. 51. The Court granted the requested continuance on December 15, 2023.

10   Dkt. No. 52.

11        On March 27, 2024, the Government filed a second superseding indictment charging Mr.

12   Miller-Jimerson for the first time and adding charges against Mr. Hartfield and Mr. Ortega. Dkt.

13   No. 63.[3] All three pleaded not guilty. Dkt. Nos. 66–67, 69.

14        On June 28, 2024, Mr. Ortega's counsel filed a motion to withdraw, which was granted,

15   and Mr. Ortega was appointed new counsel. Dkt. Nos. 72–75. On July 29, 2024, Mr. Ortega filed

16   an unopposed motion to continue the trial to February 10, 2025 so that his new counsel could be

17   adequately prepared for trial. Dkt. No. 76 at 2–4. All defendants filed speedy trial waivers to that

18   effect. Dkt. Nos. 76-2, 77–78.[4] The Court granted the motion on August 7, 2024. Dkt. No. 80. In

19   November 2024, Mr. Ortega's counsel filed a motion to withdraw, which was granted, and Mr.

20   _____

21   [2] Mr. Ortega agreed that a continuance was necessary because the defense needed more time to review three intervening discovery productions from the Government that collectively totaled over 100 gigabytes of video, audio, and .jpeg files. Dkt. No. 52 at 2.

22   [3] On March 18, 2024—prior to the second superseding indictment—Magistrate Judge Brian Tsuchida found probable cause that Mr. Miller-Jimerson committed numerous offenses as described in a complaint filed by the Government on the same date. No. 2:24-mj-00167-BAT, Dkt. No. 1 at 15; *see also generally id.* Mr. Miller-Jimerson was arrested and made his initial appearance on that date. No. 2:24-mj-00167-BAT, Dkt. No. 4.

23

24   [4] Mr. Hartfield filed a response reiterating that he "agree[d] to the continuance" and stating that he "hop[ed] this [wa]s the last continuance." Dkt. No. 79 at 1.

ORDER CONTINUING TRIAL AND DENYING MOTION TO SEVER DEFENDANT - 3

1    Ortega was again appointed new counsel. Dkt. Nos. 89, 92–93. On December 19, 2024, Mr. Miller-

2    Jimerson filed an unopposed motion to continue the trial to July 21, 2025 because "[t]he amount

3    of discovery i[n] this case is extremely voluminous," including "hundreds of pages of written

4    discovery," "hundreds of videos ranging in time from mere minutes to over an hour," "police

5    reports from multiple jurisdictions," "thousands of pages of phone records and phone location

6    data," and "hundreds of pages of Facebook accounts and other internet based programs." Dkt. No.

7    95 at 2. Mr. Miller-Jimerson indicated that Mr. Hartfield and Mr. Ortega agreed with and joined

8    the motion, and all three defendants filed speedy trial waivers in alignment with the proposed trial

9    date. *Id.* at 3; Dkt. Nos. 96–98. The Court granted the motion on January 14, 2025. Dkt. No. 99.

10   This was Mr. Hartfield's final speedy trial waiver to date, and he consented to a trial date "no later

11   than September 1, 2025." Dkt. No. 96 at 1.

12          In May 2025, there were numerous developments in the case. On May 6, the Government

13   filed a superseding information as to Mr. Miller-Jimerson, charging him with Armed Bank

14   Robbery, Robbery, and Conspiracy to Use a Firearm During and in Relation to a Crime of

15   Violence. Dkt. No. 102. Mr. Miller-Jimerson waived his right to an indictment and entered into a

16   plea agreement on May 8, 2025. Dkt. Nos. 104–06. That same day, Magistrate Judge Kate

17   Vaughan issued a Report and Recommendation recommending that this Court accept Mr. Miller-

18   Jimerson's guilty plea, Dkt. No. 107, but Mr. Miller-Jimerson moved to withdraw his guilty plea

19   on May 22, 2025, Dkt. No. 124, before it was accepted by this Court, Dkt. No. 134.

20          On May 14, 2025—after Mr. Miller-Jimerson entered his plea and before he withdrew it—

21   the Government filed a third superseding indictment naming only Mr. Hartfield and Mr. Ortega as

22   defendants. Dkt. Nos. 108–09. Shortly thereafter, Mr. Ortega's counsel filed a motion to continue

23   trial "[g]iven the amount of discovery that has been disclosed as well as the fact that counsel has

24   only had six months to review the discovery and prepare for trial," but noted that his client opposed

1   the request. Dkt. No. 114 at 2. Later that day, Mr. Ortega's counsel filed a motion to withdraw,

2   Dkt. No. 116, which was granted, Dkt. No. 125. On May 30, 2025, Mr. Ortega's new counsel

3   quickly filed his own motion to withdraw and substitute new counsel due to "an actual,

4   irreconcilable conflict of interest," Dkt. No. 132 at 3, which was granted, Dkt. Nos. 137–38, and

5   new counsel was appointed, Dkt. No. 142. Around this same time, Mr. Miller-Jimerson's counsel

6   also filed a motion to withdraw, Dkt. No. 128, which was granted, Dkt. No. 137, and new counsel

7   was appointed for Mr. Miller-Jimerson as well, Dkt. No. 143.

8          Mr. Hartfield opposed the continuance requested by Mr. Ortega's former counsel, stating

9   for the first time that "there is no basis for an additional continuance at this time." Dkt. No. 126 at

10  3. He did not waive any additional speedy trial time beyond his prior consent to a trial date "no

11  later than September 1, 2025," Dkt. No. 96 at 1. The Government subsequently filed a "response

12  to Hartfield's opposition," in which it indicated that it did not oppose "a reasonable continuance

13  to ensure that Danesxy Ortega's counsel has adequate time to prepare for trial and provide effective

14  assistance of counsel." Dkt. No. 127 at 1. On June 6, 2025, the Court held a hearing with the

15  Government, Mr. Hartfield, Mr. Ortega, and Mr. Miller-Jimerson on Mr. Ortega's former

16  counsel's motion to continue. Dkt. No. 144. The Court found that the requested delay was

17  reasonable "for Mr. Ortega's new attorney to review discovery, draft and file pretrial motions, and

18  prepare for trial," and continued the trial to November 24, 2025. Dkt. No. 145 at 11. The Court

19  noted that

20          Mr. Hartfield and Mr. Ortega have previously represented to this Court that the
            complexity of this case, the nature of the evidence, and the volume of discovery
21          required at least 22 months of continuances. Dkt. Nos. 24, 43, 49. They have also
            moved for or agreed to continuances of 10 months based on relatively newly
22          appointed attorneys' need for additional time to review discovery and prepare for
            trial. Dkt. Nos. 76, 95.
23
24  Dkt. No. 145 at 11. The Court also evaluated whether a continuance would violate Mr. Hartfield's

or Mr. Ortega's speedy trial rights. *Id.* at 10–17. After weighing all of the relevant factors, the Court found that their statutory and constitutional rights to a speedy trial would not be violated by the requested continuance. *Id.* at 11, 17. The Court excluded the period of delay from the date of that order to the new trial date under the Speedy Trial Act. *Id.* at 20. Finally, the Court addressed Mr. Hartfield's procedurally improper request for a severance (made in his response brief to Mr. Ortega's former counsel's motion to continue), finding that even if any party had moved for severance in this case, it was not warranted under the circumstances. *Id.* at 17–19.

On June 12, 2025, the Government filed a fourth superseding indictment charging Mr. Hartfield, Mr. Ortega, and Mr. Miller-Jimerson with numerous counts related to alleged robberies of banks and marijuana dispensaries. Dkt. Nos. 146–47. On September 3, 2025, Mr. Ortega pleaded guilty to Conspiracy to Commit Robbery in violation of 18 U.S.C. § 371 and Brandishing a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Dkt. No. 168. This Court accepted Mr. Ortega's plea and adjudicated him guilty. Dkt. No. 169. The remaining charges are as follows:

| Charges | Defendant(s) |
|---|---|
| Count 1: Conspiracy to Commit Robbery in violation of 18 U.S.C. §§ 371, 1951(a), -(b)(1), 2113(a) | Hartfield, Miller-Jimerson |
| Count 2: Robbery in violation of 18 U.S.C. §§ 1951(a), -(b)(1) and 2 | Hartfield |
| Count 3: Using a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (ii) and 2 | Hartfield |
| Count 4: Robbery in violation of 18 U.S.C. §§ 1951(a), -(b)(1) and 2 | Hartfield |
| Count 5: Using a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (ii) and 2 | Hartfield |
| Count 6: Robbery in violation of 18 U.S.C. §§ 1951(a), -(b)(1) and 2 | Hartfield, Miller-Jimerson |
| Count 7: Using a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (ii) and 2 | Hartfield, Miller-Jimerson |
| Count 8: Robbery in violation of 18 U.S.C. §§ 1951(a), -(b)(1) and 2 | Hartfield |
| Count 9: Using a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)–(iii) and 2 | Hartfield |

| | |
|---|---|
| Count 10: Robbery in violation of 18 U.S.C. §§ 1951(a), -(b)(1) and 2 | Hartfield |
| Count 11: Using a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (ii) and 2 | Hartfield |
| Count 12: Robbery in violation of 18 U.S.C. §§ 1951(a), -(b)(1) and 2 | Hartfield, Miller-Jimerson |
| Count 13: Using a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (ii) and 2 | Hartfield, Miller-Jimerson |
| Count 14: Robbery in violation of 18 U.S.C. §§ 1951(a), -(b)(1) and 2 | Hartfield, Miller-Jimerson |
| Count 15: Using a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (ii) and 2 | Hartfield, Miller-Jimerson |
| Count 16: Robbery in violation of 18 U.S.C. §§ 1951(a), -(b)(1) and 2 | Miller-Jimerson |
| Count 17: Using a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)–(iii) and 2 | Miller-Jimerson |
| Count 18: Robbery in violation of 18 U.S.C. §§ 1951(a), -(b)(1) and 2 | Hartfield |
| Count 19: Bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2 | Hartfield |
| Count 20: Bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2 | Hartfield |
| Count 21: Attempted armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2 | Hartfield, Miller-Jimerson |
| Count 22: Using a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (ii) and 2 | Hartfield, Miller-Jimerson |
| Count 23: Armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2 | Hartfield, Miller-Jimerson |
| Count 24: Using a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (ii) and 2 | Hartfield, Miller-Jimerson |
| Count 25: Bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2 | Hartfield, Miller-Jimerson |

Dkt. No. 146 at 1–16.

On September 15, 2025, Mr. Miller-Jimerson requested the continuance currently before the Court, Dkt. No. 177, and on September 19, 2025, Mr. Hartfield moved for his trial to be severed, Dkt. No. 179.

## II.    DISCUSSION

Mr. Miller-Jimerson seeks a continuance to protect his Sixth Amendment right to the effective assistance of counsel. Dkt. No. 177. Mr. Hartfield opposes continuance and, in the event one is granted, seeks severance to protect his right to a speedy trial under the Sixth Amendment and the Speedy Trial Act. Dkt. Nos. 178–79. For the reasons detailed below, the Court finds that

1    Mr. Miller-Jimerson's right to effective assistance of counsel justifies continuing the trial, and

2    further concludes that a continuance would not violate Mr. Hartfield's speedy trial rights and that

3    severance is not warranted.

4    **A.    Legal Standard**

5          The Sixth Amendment guarantees criminal defendants the right to effective assistance of

6    counsel. *United States v. Quintero*, 995 F.3d 1044, 1059 (9th Cir. 2021) (citing *Strickland v.*

7    *Washington*, 466 U.S. 668, 686, 688 (1984)). The right to effective assistance of counsel

8    "implicitly embraces adequate opportunity for the accused and his counsel to consult, advise and

9    make such preparation for arraignment and trial as the facts of the case fairly demand." *Betschart*

10   *v. Oregon*, 103 F.4th 607, 621 (9th Cir. 2024) (quoting *De Roche v. United States*, 337 F.2d 606,

11   607 (9th Cir. 1964)). This includes ensuring sufficient time for counsel to, among other things,

12   interview witnesses, review electronic discovery, investigate lines of defense, explore plea offers,

13   and warn the accused of possible risks in sentencing. *See id.* at 620–22 (describing the attorney-

14   client relationship in the context of the Sixth Amendment right to counsel).

15         The Sixth Amendment also guarantees that "[i]n all criminal prosecutions, the accused

16   shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. Congress enacted the

17   Speedy Trial Act "[t]o give effect to" the Sixth Amendment right to a speedy and public trial.

18   *United States v. Olsen*, 21 F.4th 1036, 1040 (9th Cir. 2022) (per curiam). That Act generally

19   requires a criminal defendant's trial to begin within 70 days of the date on which the indictment

20   was filed or the date on which the defendant makes an initial appearance, whichever is later, 18

21   U.S.C. § 3161(c)(1), and excluding certain periods of delay enumerated in the statute, *id.* §

22   3161(h); *see Zedner v. United States*, 547 U.S. 489, 497 (2006) ("[T]he Act recognizes that

23   criminal cases vary widely and that there are valid reasons for greater delay in particular cases. To

24   provide the necessary flexibility, the Act includes a long and detailed list of periods of delay that

ORDER CONTINUING TRIAL AND DENYING MOTION TO SEVER DEFENDANT - 8

are excluded in computing the time within which trial must start."). Delays not in one of the enumerated categories may be excluded to serve the "ends of justice." 18 U.S.C. § 3161(h)(7)(A). "It is well established that an exclusion from the Speedy Trial clock for one defendant applies to all codefendants" as long as the delay is "reasonable." *United States v. Messer*, 197 F.3d 330, 336 (9th Cir. 1999). Specifically, 18 U.S.C. § 3161(h)(6) excludes from the 70-day period "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." Speedy Trial Act delays are often reasonable in cases that involve voluminous discovery, a large number of counts, and several defendants, *United States v. Lewis*, 611 F.3d 1172, 1176 (9th Cir. 2010), particularly if delaying a co-defendant's trial is necessary to avoid severing a conspiracy prosecution, *United States v. Casellas*, 842 F. App'x 95, 97 (9th Cir. 2021).

## B.    A Continuance is Warranted

Mr. Miller-Jimerson's current counsel was appointed on June 4, 2025, Dkt. No. 143, and says that he "has simply had inadequate time, considering the exercise of due diligence, to prepare for trial in this matter," Dkt. No. 177 at 4. Specifically:

> This is an extraordinarily complicated case with a massive amount of discovery. The Court has previously found that these issues justified more than 2.5 years of continuances for codefendants' counsel, based on requests that were either stipulated to or not opposed by the government. Undersigned counsel has been appointed to the case for just over three months, and despite diligent effort to review the discovery, discuss it with Mr. Miller-Jimerson, and move the case towards readiness for trial, counsel is unable to be prepared for trial by the currently scheduled trial date.

*Id.* at 2. Discovery is indeed massive: as of the time Mr. Miller-Jimerson's counsel was appointed to represent him, discovery included "over 125 gigabytes of materials, including video, audio, and .jpeg files, and over 40,000 pages of discovery," and since that time, "counsel has received several additional productions . . . . [which] include thousands of pages of additional reports, warrant

applications, warrant returns, as well [as] multiple cellphone extractions." *Id.* at 3. In the months since his appointment, "counsel has endeavored to review as much of the discovery as possible, has met with Mr. Miller-Jimerson more than half a dozen times, has engaged an investigator, and has met and conferred with the government several times," but "[d]espite these efforts, it will still take quite a bit of additional time and effort for counsel just to fully review and analyze the discovery materials, let alone conduct necessary additional investigation, explore plea offers, plan a defense, prepare motions, and prepare for trial." *Id.*; *see also* Dkt. No. 194-1 at 3. Mr. Miller-Jimerson says that the requested continuance is necessary "to avoid a violation of [his] Sixth Amendment right to effective assistance of counsel." Dkt. No. 177 at 3; *see also* Dkt. No. 194-1 at 3 ("Given the scope of the case and the discovery, and my progress thus far, there is no way I can effectively represent Mr. Miller-Jimerson at trial if the trial proceeds as presently scheduled. This would remain true even if I prioritized this case by neglecting all my other clients.").

Both Mr. Hartfield and the Government oppose the motion. Dkt. Nos. 178, 188. Mr. Hartfield states that "he does not wish to continue the trial further and will not waive additional speedy trial time," but does not address whether the requested continuance is warranted. Dkt. No. 178 at 1. The Government says that it is "confident that defense counsel will be able to provide effective assistance of counsel by the trial date" and that "there are a multitude of victims that have been waiting years for justice after being victimized during the violent armed robberies orchestrated by the defendants." Dkt. No. 188 at 1. Mr. Jimerson-Miller responds that "[e]ven if counsel were to dedicate every waking moment to the representation of Mr. Miller-Jimerson, he would still not be ready for trial by the currently scheduled trial date" and that "forcing Mr. Miller-Jimerson to trial as scheduled will inevitably result in his receipt of constitutionally deficient counsel at trial." Dkt. No. 194 at 2.

Because of the complexity of this case and the extraordinarily voluminous discovery, which includes hundreds of videos ranging in time from mere minutes to over an hour, Dkt. No. 145 at 4 (citing Dkt. No. 95 at 2); *see also* Dkt. No. 43 at 2; Dkt. No. 52 at 2; Dkt. No. 127 at 3, Mr. Hartfield has filed or agreed to the following motions for continuances:

- November 7, 2022: Mr. Ortega and Mr. Hartfield moved to continue trial from December 19, 2022 to July 10, 2023 (~**7 months**). Dkt. No. 24.

- May 12, 2023: Mr. Ortega and Mr. Hartfield moved to continue trial from July 10, 2023 to January 16, 2024 (~**6 months**). Dkt. No. 43.

- December 4, 2023: Mr. Hartfield, joined by Mr. Ortega, moved to continue trial from January 16, 2024 to September 16, 2024 (**8 months**). Dkt. Nos. 49–50.

- July 29, 2024: Mr. Ortega, with Mr. Hartfield's and Mr. Miller-Jimerson's agreement, filed a stipulated motion to continue trial from September 16, 2024 to February 10, 2025 (~**5 months**). Dkt. No. 76.

- December 19, 2024: Mr. Miller-Jimerson, with Mr. Hartfield's and Mr. Ortega's agreement, moved to continue trial from February 10, 2025 to July 21, 2025 (~**5 months**). Dkt. No. 95.

Those continuances total approximately 31 months and were granted by the Court largely due to the time required to review the voluminous discovery and prepare for trial. For example, in May 2023, Mr. Hartfield requested a six-month continuance because discovery included "more than 10,000 pages of material in addition to video and audio recordings" that exceeded 27 gigabits of material, and "thousands of pages of Facebook records and Cellebrite records (cell phone)." Dkt. No. 43 at 2. And in December 2023—over a year after his counsel was retained—Mr. Hartfield requested another eight-month continuance due to the "volume of discovery" in the case, and "substantial difficulties both in downloading, organizing, and sharing the materials." Dkt. No. 49 at 2. The Court granted both requests, reasoning that counsel needed the more time to effectively prepare for trial. Dkt. Nos. 46, 52.

1        For the same reasons that Mr. Hartfield's counsel previously needed more time, a

2   November 2025 trial date does not leave Mr. Miller-Jimerson's counsel with sufficient time to be

3   able to effectively prepare for and represent Mr. Miller-Jimerson at trial. Moreover, Mr. Miller-

4   Jimerson's counsel's representation to the Court that denying his motion would result in

5   "constitutionally deficient counsel at trial," Dkt. No. 194 at 2, suggests that his counsel may be

6   obligated to withdraw if a continuance were denied, and unless the Court forced him to proceed

7   with trial unprepared, his withdrawal would only result in an inevitable motion for a continuance

8   from replacement counsel.

9        Having decided that a continuance is necessary and appropriate, the Court must determine

10  how long the continuance should be.

11  **C.    Trial is Continued to May 4, 2026**

12       Mr. Miller-Jimerson requests a trial date of May 4, 2026, Dkt. No. 177, and signed a speedy

13  trial waiver through May 31, 2026, Dkt. No. 177-1. As discussed above, in his final speedy trial

14  waiver, Mr. Hartfield consented to a trial date "no later than September 1, 2025," but he opposes

15  any more continuances. Dkt. No. 96 at 1. While both Mr. Hartfield and the Government oppose

16  Mr. Miller-Jimerson's request, Dkt. Nos. 178, 188, there is no joint proposed trial date beyond the

17  current scheduled date of November 24, 2025.

18       1.   Speedy Trial Act

19       Again, 18 U.S.C. § 3161(h)(6) excludes from the Speedy Trial clock "[a] reasonable period

20  of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has

21  not run and no motion for severance has been granted." *See also Lewis*, 611 F.3d at 1176 ("[I]n

22  order to attribute a codefendant's excludable delay under § 3161(h)(7) to a defendant, the delay

23  must meet the reasonableness requirement of § 3161(h)(6)."). "Generally speaking, defendants

24

1    jointly charged are to be jointly tried." *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir.

2    1980). This is because

> [i]t would impair both the efficiency and the fairness of the criminal justice system to
> require, in all these cases of joint crimes . . . , that prosecutors bring separate proceedings,
> presenting the same evidence again and again, requiring victims and witnesses to repeat
> the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-
> tried defendants who have the advantage of knowing the prosecution's case beforehand.

6    *Richardson v. Marsh*, 481 U.S. 200, 210 (1987).

7            In his response to Mr. Miller-Jimerson's motion to continue, Mr. Hartfield does not contest

8    Mr. Miller-Jimerson's arguments that an additional five and a half months is reasonable and

9    necessary to review the significant volume of discovery and prepare for trial. *See generally* Dkt.

10   No. 178. However, in his motion to sever, Mr. Hartfield argues that the requested delay is

11   unreasonable because it stems "from co-defendants' voluntary decisions to terminate their

12   attorneys." Dkt. No. 179 at 3. For the Government's part, despite its opposition to Mr. Miller-

13   Jimerson's motion to continue, it avers that "the requested delay is reasonable, both under the Sixth

14   Amendment and the statutory framework." Dkt. No. 190 at 4; *see also id.* at 5 ("Courts around the

15   country have endorsed similar lengths of delay in complex cases such as this one."); *id.* at 6 ("The

16   reasons for the delay in this case . . . are largely tied to legitimate trial-readiness needs of the

17   defense.").

18           If trial in this case were to begin on May 4, 2026, it would be a roughly eight-month delay

19   following Mr. Hartfield's final speedy trial waiver. The Court "gauge[s] the reasonableness of

20   delay on a case by case basis, given the fact-bound nature of the inquiry." *Messer*, 197 F.3d at 337

21   (citation modified). "[C]ourts look particularly to whether the delay [i]s necessary to achieve its

22   purpose and to whether there [i]s any actual prejudice suffered by the [defendant]." *United States*

23   *v. Hall*, 181 F.3d 1057, 1062 (9th Cir. 1999) (citation modified). "Other relevant considerations

24   include whether the length of the delay '[i]s so egregious as to call into question its reasonableness'

and 'whether the defendant [i]s free on bond during the delay.'" *United States v. Henry*, 984 F.3d 1343, 1350 (9th Cir. 2021) (quoting *Messer*, 197 F.3d at 338). Mr. Hartfield provides no support for the proposition that appointment of new counsel for a co-defendant constitutes unreasonable grounds for delay. As Mr. Hartfield acknowledges, Mr. Miller-Jimerson was added as a co-defendant in this case on March 18, 2024. Dkt. No. 179 at 4 (citing *United States v. Miller-Jimerson*, No. 24-mj-00167 BAT, Dkt. No. 1).[5] Since then, Mr. Miller-Jimerson has only been appointed new counsel one time—on June 4, 2025. Dkt. No. 143. Thus, contrary to Mr. Hartfield's argument, Mr. Miller-Jimerson has not "repeatedly" terminated counsel. Furthermore, although Mr. Ortega was granted new counsel numerous times, Dkt. Nos. 75, 93, 133, 142, Mr. Hartfield supported or joined in all but one of Mr. Ortega's motions to continue, and the Court has already found that these repeated appointments did not result in unreasonable delay. Dkt. No. 145 at 10–17.

In terms of the reasonableness of the length of the requested continuance, as discussed above, Mr. Hartfield has previously represented to this Court (or agreed with his co-defendants in arguing) that the complexity of this case, the nature of the evidence, and the volume of discovery required at least 31 months of continuances. *See* Dkt. Nos. 24, 43, 49, 76, 95. And Mr. Hartfield expressly sought at least 21 months of continuances for his counsel to prepare for trial given the volume of discovery and difficulties associated with reviewing so much data. Dkt. Nos. 24, 43, 49. This included a requested continuance of eight months despite Mr. Hartfield's counsel having

---

[5] No party argues that the delay in adding Mr. Miller-Jimerson to the case or in adding additional counts was unreasonable or done in bad faith. *See United States v. Chen Chiang Liu*, 631 F.3d 993, 998–99 (9th Cir. 2011) (all defendants who are joined for trial fall within the speedy trial computation of the "latest codefendant" as long as the delay is reasonable and there is no bad faith on the part of the Government (quoting *Henderson v. United States,* 476 U.S. 321, 323 n.2 (1986))). Therefore, Mr. Hartfield's Speedy Trial Act clock began ticking when Mr. Miller-Jimerson was joined to the case. One twist here is that Mr. Miller-Jimerson was joined twice—first in the second superseding indictment in March 2024, and then in the Fourth Superseding Indictment on June 12, 2025. Although the Government argues that the clock started on the latter date, Dkt. No. 190 at 5, for purposes of this analysis the Court assumes without deciding that the Speedy Trial Act clock started on March 27, 2024, when the second superseding indictment was filed. Dkt. No. 63.

already been appointed for over a year. *See* Dkt. No. 10; Dkt. No. 49 at 2. If trial begins on November 24, 2025, Mr. Miller-Jimerson's counsel would only have five months to prepare from the date of his appointment. *See* Dkt. No. 143.[6] There is no indication that circumstances have changed such that discovery is now less voluminous or that new counsel needs less time to prepare for trial than was requested by Mr. Hartfield. To the contrary, the Government's arguments suggest that, if anything, there is more discovery available now than before. *See* Dkt. No. 188 at 4. Based on Mr. Hartfield's prior representations to the Court, it is not difficult to conclude that a total period of roughly 11 months for Mr. Miller-Jimerson's counsel to review discovery, draft and file pretrial motions, and prepare for trial is reasonable. This delay serves to safeguard Mr. Miller-Jimerson's right to effective assistance of counsel, ensuring that reasonable time is afforded for his new counsel to accomplish those tasks.

Finally, as discussed below in detail, *see* Section II.C.2(d), Mr. Hartfield's assertions of prejudice from the eight-month delay are purely or largely speculative.

Considering the facts of this case, and the 31 months of continuances to which Mr. Hartfield previously consented, the Court finds the eight-month delay here to be reasonable under Section 3161(h)(6). *See, e.g.*, *United States v. Yandell*, No. 2:19-CR-00107-KJM, 2023 WL 2620418, at *10 (E.D. Cal. Mar. 23, 2023) (finding that an eight- or nine-month delay was reasonable where the delay was "tied to making a joint trial possible[, t]h[e] case [wa]s complex[, d]iscovery [wa]s voluminous[, t]he government w[ould] likely rely on the same body of evidence to prove the conspiracy charges and allegations" against the codefendants in the alleged conspiracy, "[t]he defendants have needed time to review and seek discovery and litigate pretrial

---

[6] The Government's argument that a continuance should be denied because Mr. Miller-Jimerson's *prior counsel* "had the benefit of a previously granted five-month continuance," Dkt. No. 188 at 3, is specious and illogical. While some efficiencies are gained from work done by a prior attorney, it is nowhere near a one-to-one ratio.

motions," and the objecting defendant did not show that he would likely suffer prejudice from the delay); *United States v. Beal*, No. 18-CR-00070-DKW-12, 2021 WL 2325331, at *6 (D. Haw. June 7, 2021) (nine months of trial delays over one defendant's objection was reasonable where the delays were caused by two codefendants' newly-appeared attorneys' need for additional time to review discovery and prepare for trial).

    2. Sixth Amendment

    Because the overall delay in this case will exceed 42 months, the Court proceeds to evaluate whether a continuance will violate Mr. Hartfield's constitutional speedy trial right. The Court considers four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). None of these four factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial"; instead, "they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533. Where, as here, the time limits of the Speedy Trial Act have been met, there is a "strong presumption" of compliance with the Sixth Amendment. *United States v. Baker*, 63 F.3d 1478, 1497 (9th Cir. 1995); *see also United States v. King*, 483 F.3d 969, 976 (9th Cir. 2007) (it is "unusual" to find a Sixth Amendment violation when there is no Speedy Trial Act violation). However, the constitutional analysis is "more flexible" than the Speedy Trial Act inquiry. *United States v. Murillo*, 288 F.3d 1126, 1131 (9th Cir. 2002).

        (a) Length of Delay

    The first factor, which considers the length of the delay, also serves as a screening device for a full speedy trial analysis under *Barker*. The "general consensus" is that an eight-month delay "constitutes the threshold minimum" to initiate the full *Barker* inquiry. *United States v. Gregory*, 322 F.3d 1157, 1162 n.3 (9th Cir. 2003); *United States v. Alfaro-Hidalgo*, No. 21-10066, 2022

1    WL 999937, at *1 (9th Cir. Apr. 4, 2022). And a delay "approaching one year" is generally

2    presumptively prejudicial. *Gregory*, 322 F.3d at 1161–62. The length of the delay "is measured

3    from the time of the indictment to the time of trial." *Id.* at 1162 (citation modified).

4           Assuming without deciding that the Sixth Amendment speedy trial clock on all charges in

5    the fourth superseding indictment started to run when the initial indictment was filed, the delay

6    from that point to May 4, 2026 is over 42 months. "That is a substantial delay." *United States v.*

7    *Lonich*, 23 F.4th 881, 894 (9th Cir. 2022), *overruled in part on other grounds by United States v.*

8    *Lucas*, 101 F.4th 1158 (9th Cir. 2024). "But under *Barker*, it is not conclusively a Speedy Trial

9    Clause violation." *Id.* It is not nearly as egregious as other cases in which courts have found Speedy

10   Trial Clause violations. *See, e.g., Doggett v. United States*, 505 U.S. 647, 657 (1992) (8.5-year

11   delay); *United States v. Black*, 918 F.3d 243, 248–49 (2d Cir. 2019) (over 5.5-year delay); *United*

12   *States v. Handa*, 892 F.3d 95, 107 (1st Cir. 2018) (6.5-year delay); *United States v. Shell*, 974 F.2d

13   1035, 1036 (9th Cir. 1992) (five-year delay). Indeed, courts have held that much longer delays

14   than the one here were permissible under the Speedy Trial Clause. *See, e.g.*, *United States v. Loud*

15   *Hawk*, 474 U.S. 302, 314–17 (1986) (more than seven-year delay); *Barker*, 407 U.S. at 533–34

16   ("well over five year[ ]" delay); *United States v. Alexander*, 817 F.3d 1178, 1183 (9th Cir. 2016)

17   (per curiam) (five-year delay); *United States v. Corona-Verbera*, 509 F.3d 1105, 1116 (9th Cir.

18   2007) ("nearly eight-year delay"); *United States v. Aguirre*, 994 F.2d 1454, 1456–58 (9th Cir.

19   1993) (five-year delay); *Rayborn v. Scully*, 858 F.2d 84, 89 (2d Cir. 1988) (over seven-year delay).

20   Thus, the delay here is not dispositively unconstitutional, but instead "presumptively prejudicial."

21   *Gregory*, 322 F.3d at 1162. This means it is "sufficient to trigger inquiry into the other three

22   [*Barker*] factors." *Corona-Verbera*, 509 F.3d at 1114.

23

24

1

*(b) Reason for Delay*

2    The second *Barker* factor considers the reason for delay. The purpose of this factor is to

3  evaluate "whether the government or the criminal defendant is more to blame for th[e] delay."

4  *Doggett*, 505 U.S. at 651. Intentional government tactics to delay the trial weigh heavily against

5  the government. *Barker*, 407 U.S. at 531; *see also United States v. Myers*, 930 F.3d 1113, 1119

6  (9th Cir. 2019). By contrast, "a good-faith, reasonable justification for the delay, such as a missing

7  witness, or a meritorious interlocutory appeal, will weigh less heavily against the government or

8  not weigh against the government at all." *Myers*, 930 F.3d at 1119–20 (citing *Barker*, 407 U.S. at

9  531, and *Loud Hawk*, 474 U.S. at 316). And delay weighs against a defendant when it is "not the

10 prosecution" causing the delay. *United States v. Walker*, 68 F.4th 1227, 1238 (9th Cir. 2023) ("All

11 other relevant factors weigh against [defendant]. The pandemic, not the prosecution, caused the

12 delay."). Finally, a defendant's actions that delay his own trial weigh heavily against him. *See*

13 *Myers*, 930 F.3d at 1119–20.

14   As discussed above, Mr. Hartfield delayed trial or consented to delays for a total of 31

15 months, Dkt. Nos. 24, 43, 49, 76, 95, and waived his speedy trial rights until September 1, 2025,

16 Dkt. Nos. 26, 39, 48, 78, 96. That weighs against him in a speedy trial claim. *Myers*, 930 F.3d at

17 1119–20. And the delay between September 1, 2025 and May 4, 2026 is attributable to the need

18 for newly appointed counsel for Mr. Miller-Jimerson to have adequate time to prepare, given the

19 complexity of this multidefendant conspiracy case. Mr. Hartfield complains that "there is no doubt

20 that continuances have at least, in part, been due to repeated changes in co-defendants' counsel."

21 Dkt. No. 179 at 4. As discussed above, however, Mr. Miller-Jimerson has not "repeatedly

22 changed" his counsel, and Mr. Hartfield joined in or consented to all delays associated with new

23 counsel for Mr. Ortega except the most recent one. *See* No. 2:24-mj-00167-BAT, Dkt. No. 3; Dkt.

24 No. 143. The Court further notes that even if Mr. Ortega's counsel had not sought a continuance

1    of the July 21, 2025 trial in May 2025, Mr. Miller-Jimerson surely would have once the fourth

2    superseding indictment was issued on June 12, 2025. Dkt. No. 146; Dkt. No. 144; Dkt. No. 194-1

3    at 3. "[D]elays caused by codefendants are not attributable to the government and weigh against

4    defendants." *United States v. Landa-Arevalo*, 104 F.4th 1246, 1256 (10th Cir. 2024) (finding no

5    Sixth Amendment violation when co-defendants were granted continuances of 19 months over

6    defendant's objections); *see also United States v. Keith*, 61 F.4th 839, 853 (10th Cir. 2023) (delay

7    that "occurred because two codefendants needed more time for their newly appointed counsel to

8    review discovery and prepare for trial" was a "valid reason (prompted by co-defendants) that does

9    not support [a] constitutional claim"), *cert. denied*, 144 S. Ct. 420 (2023); *see also id.* ("Delays

10   owing to the nature of large, multidefendant conspiracies with vast discovery are justifiable."). Mr.

11   Miller-Jimerson's constitutional right to effective assistance of counsel is a valid justification for

12   the delay here. *See generally* Dkt. No. 177.[7] Accordingly, this factor does not support a Sixth

13   Amendment violation.

14          *(c) Assertion of Right*

15          The third *Barker* factor concerns whether the defendant has asserted his right to a speedy

16   trial. If the defendant fails to assert the right, it will be "difficult . . . to prove that he was denied a

17   speedy trial." *Myers*, 930 F.3d at 1120 (quoting *Barker*, 407 U.S. at 531). "The sooner a defendant

18   raises the speedy trial issue, the more weight this factor lends to his claim"; thus, "this factor

19   weighs against a defendant who requests continuances and waits for months to assert his speedy

20   trial right." *United States v. Larson*, 627 F.3d 1198, 1208 (10th Cir. 2010) (citation modified).

21   Here, Mr. Hartfield waited 31 months to raise his speedy trial rights, Dkt. No. 126, and 35 months

22   to request severance, Dkt. No. 179. This factor accordingly weighs against him. *See Landa-*

23   _____

24   [7] Mr. Hartfield says he is "understandably concerned that it could ultimately take years for Mr. Miller-Jimerson's
     counsel to prepare," Dkt. No. 179 at 5, but at this point, that concern is purely speculative.

*Arevalo*, 104 F.4th at 1257 ("We are not persuaded by Defendant's assertion of his speedy trial right because he 'sat on his hands' for well over a year and contributed to the delay in the meantime."); *United States v. Flowers*, 476 F. App'x 55, 63 (6th Cir. 2012) (factor weighed in favor of government where defendant "waited at least twelve months and arguably seventeen months before requesting a speedy trial"); *United States v. Mendoza*, 530 F.3d 758, 764 (9th Cir. 2008) (defendant's failure to assert right to speedy trial until after making numerous requests for continuances, delaying trial by over a year, weighed against finding a speedy trial violation).

### (d) Prejudice

The fourth factor under *Barker* considers whether the defendant would be prejudiced by the delay. Courts look at the three interests the Sixth Amendment speedy trial right was designed to protect: (1) "to prevent oppressive pretrial incarceration"; (2) "to minimize anxiety and concern of the accused"; and (3) "to limit the possibility that the defense will be impaired." *Myers*, 930 F.3d at 1120 (quoting *Barker*, 407 U.S. at 532). The third of these interests is the most important. *Id.*

Mr. Hartfield alleges the following prejudice: he "remains detained at the Federal Detention Center," "witnesses' memories fade," "defense preparation is undermined by indefinite postponement," and "the delays [may] have allowed the government to secure additional witnesses against Mr. Hartfield." Dkt. No. 179 at 5.

As discussed above extensively, however, Mr. Hartfield caused or agreed to nearly all prior continuances, waiving his speedy trial rights (and thus extending his pretrial detention) through September 1, 2025, Dkt. Nos. 26, 39, 48, 78, 96. When a defendant is responsible for the delay in his trial, "he carries a heavy burden of demonstrating actual prejudice to succeed on a speedy trial claim." *United States v. Sutcliffe*, 505 F.3d 944, 957 (9th Cir. 2007) (citation modified). Mr. Hartfield has not met that burden.

By the start of trial on May 4, 2025, Mr. Hartfield will have been detained for approximately eight months beyond the date through which he has waived his rights to a speedy trial. *See* Dkt. No. 96. Considering the totality of the circumstances in this case, that duration of time is not particularly oppressive. *See United States v. Morris*, 729 F. App'x 549, 550 (9th Cir. 2018) (defendant was not subjected to oppressive pretrial incarceration where 11 months of a total 21-month delay were attributable to the government and 10 months were attributable to the defendant); *McGee v. Long*, No. EDCV 13-587 DSF(JC), 2015 WL 4554462, at *9 (C.D. Cal. June 17, 2015) (eight months of detention pending trial was not particularly oppressive), *report and recommendation adopted,* 2015 WL 4554345 (C.D. Cal. July 28, 2015).

Although Mr. Hartfield does not argue that he is experiencing anxiety and concern around the delay, *see generally* Dkt. No. 179, the Court notes that "any anxiety that [he] experience[s]" may well be due to the "serious" charges, "rather than any delay in the federal proceedings," *Myers*, 930 F.3d at 1123.

Finally, while the possibility of impairing Mr. Hartfield's defense is of the highest importance, *id.* at 1120, the concerns raised by Mr. Hartfield, Dkt. No. 179 at 5, are purely or largely speculative. First, Mr. Hartfield does not explain why the possibility of fading witness memories would prejudice him; indeed, the Supreme Court has observed that the possibility of witnesses' memories fading "may work to the accused's advantage." *Barker*, 407 U.S. at 521; *see also* Dkt. No. 190 at 7 (Government brief arguing that "[t]he trial likely involves more than fifty witnesses and as more time passes, the greater the risk that the government's witnesses become unavailable or their memories fade." (citation modified)). Second, a five-and-a-half-month delay is not "indefinite," and Mr. Hartfield makes no effort to explain how having that much more time to prepare for trial would "undermine" defense preparation. Notably, Mr. Hartfield could not even muster a substantive response to Mr. Miller-Jimerson's motion to continue trial, Dkt. No. 178, and

did not properly support his factual assertions in, or authenticate or mark the exhibits to, his pretrial motions as required by the applicable rules, *see generally* Dkt. Nos. 185, 185-2, 186, 186-1; *see* CrRs 12(b)(1), 55; Fed. R. Evid. 901, suggesting that he could benefit from additional time. Furthermore, Mr. Hartfield was not prevented from filing his pretrial motions, Dkt. Nos. 180, 185, and will benefit from receiving the Court's ruling on the parties' pretrial motions well in advance of trial. Third, Mr. Hartfield's bare assertion that "the government may secure additional witnesses" is purely speculative. Accordingly, the Court finds that a delay to May 4, 2026 is not prejudicial under *Barker*.

*        *        *

Weighing all these factors, the Court finds that Mr. Hartfield's constitutional right to a speedy trial will not be violated by the continuance requested here.

**D.    Severance of Mr. Hartfield is Not Justified**

There is a well-established "preference in the federal system for joint trials of defendants who are indicted together[.]" *Zafiro v. United States*, 506 U.S. 534, 537 (1993). The "strong proclivity for joint trials is based in part on the recognition that trying co-defendants together conserves judicial resources, diminishes inconvenience and harm to witnesses and victims, and avoids delays in bringing those charged with crimes to trial." *United States v. Alvarez-Quinonez*, No. CR20-093 RSM, 2022 WL 101856, at *1 (W.D. Wash. Jan. 11, 2022) (citing *United States v. Lane*, 474 U.S. 438, 449 (1986)). Joint trials also "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro*, 506 U.S. at 537. Notably, joint trials are "particularly appropriate" when defendants are charged with conspiracy, as is the case here. *United States v. Jenkins*, 633 F.3d 788, 807 (9th Cir. 2011) (citing *Zafiro*, 506 U.S. at 536–37).

"Congress recognized the utility of multi-defendant trials to effectuate the prompt efficient disposition of criminal justice. It felt that the efficiency and economy of joint trials far outweighed

the desirability of granting a severance where the criterion was simply the passage of time." *King*, 483 F.3d at 974 (quoting *United States v. Varella*, 692 F.2d 1352, 1359 (11th Cir. 1982)). Accordingly, Rule 14(a) limits severance of co-defendants' trials to when joinder "appears to prejudice a defendant[.]" Fed. R. Crim. P. 14(a). The burden on the party seeking severance is high—"manifest prejudice" must be shown, *United States v. Jawara*, 474 F.3d 565, 579 (9th Cir. 2006), and severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence," *Zafiro*, 506 U.S. at 539. The moving defendant "must show that 'joinder was so manifestly prejudicial that it outweigh[s] the dominant concern with judicial economy.'" *United States v. Garcia*, 506 F. App'x 593, 595 (9th Cir. 2013) (quoting *United States v. Douglass*, 780 F.2d 1472, 1478 (9th Cir. 1986)).

Neither the Ninth Circuit nor the Supreme Court appears to have expressly decided whether a defendant's right to a speedy trial is one of the "specific trial rights" that, if at risk in a joint trial, can justify severance under Rule 14. *See Yandell*, 2023 WL 2620418, at *7. However, the Ninth Circuit has suggested that it is. *See Messer*, 197 F.3d at 340 ("The district court should have severed [a third defendant's] trial once it became apparent to the court that [he] was going to be tried first in Rhode Island" while two co-defendants waited.). As discussed above, "an exclusion from the Speedy Trial clock for one defendant applies to all codefendants"; provided, however, that the attribution of delay to a co-defendant "is limited by a reasonableness requirement[.]" *Messer*, 197 F.3d at 336. For the reasons stated above, this Court has found that the delay here is reasonable under both the Speedy Trial Act and the Sixth Amendment. Furthermore, Mr. Hartfield does not argue that Mr. Miller-Jimerson has been improperly joined under Rule 8(b) of the Federal Rules of Criminal Procedure.

Beyond the *Barker* factors, Mr. Hartfield argues only that "[w]here continuances are repeatedly generated by co-defendants' decisions to change attorneys, efficiency no longer justifies overriding Mr. Hartfield's speedy trial rights." Dkt. No. 179 at 5. However, as discussed above, the continuance granted here is due to Mr. Miller-Jimerson's new counsel needing reasonable time to prepare. Mr. Miller-Jimerson has not repeatedly decided to change attorneys. He requested new counsel only once: his first counsel was appointed on March 18, 2024, No. 2:24-mj-00167-BAT, Dkt. No. 3, and he was appointed new counsel on June 4, 2025, Dkt. No. 143. Accordingly, the Court disagrees that efficiency is no longer served by a joint trial. To the contrary, a joint trial is particularly appropriate in this case due to the conspiracy charge and the fact that the Government will rely on the same body of evidence to prove the 25 counts in this case. *See* Dkt. No. 146 at 2–3 ("During and in furtherance of the conspiracy, within the Western District of Washington, one or more of the conspirators committed one or more of the following overt acts, among others: that is, the acts involved in committing the offenses alleged in Counts 2 through 25[.]"); Dkt. No. 190 at 4 (Government averring that this is a "complex conspiracy case" with "an anticipated multi-week trial involving one primary body of evidence and multiple victim-witnesses"). Mr. Hartfield has not shown that "joinder [i]s so manifestly prejudicial that it outweigh[s] the dominant concern with judicial economy." *Garcia*, 506 F. App'x at 595 (quoting *Douglass*, 780 F.2d at 1478). His motion to sever is denied.

### III.   CONCLUSION

With respect to Mr. Miller-Jimerson's motion, the Court finds as follows:

1.     Considering the exercise of due diligence, a failure to grant a continuance in this case would deny counsel for Defendants the reasonable time necessary for effective preparation due to counsel's need for time to review discovery, investigate, prepare pretrial motions (to the extent permitted; see below), and prepare for trial pursuant to 18 U.S.C. § 3161(h)(7)(B)(iv);

2.      A failure to grant a continuance would likely result in a miscarriage of justice and would deny Mr. Miller-Jimerson's counsel the reasonable time necessary for effective preparation, taking into account the exercise of due diligence, due to counsel's need for more time to review the evidence, consider possible defenses, gather evidence material to the defense, and prepare for trial, *see* 18 U.S.C. § 3161(h)(7)(B)(i)–(ii), (iv);

3.      This case is complex within the meaning of 18 U.S.C § 3161(h)(7)(B)(ii) such that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the default 70-day period;

4.      The ends of justice will be served by a continuance, and outweigh the interest of the public, the Government, Mr. Hartfield, and Mr. Miller-Jimerson in any speedier trial pursuant to 18 U.S.C. § 3161(h)(7)(A); and

5.      The additional time requested between the current trial date of November 24, 2025 and May 4, 2026 is a reasonable period of delay and will be necessary to provide Defendants reasonable time to complete the tasks set forth above. 18 U.S.C. § 3161(h)(6).

The Court accordingly GRANTS Mr. Miller-Jimerson's Motion to Continue Trial, Dkt. No. 177, DENIES Mr. Hartfield's Motion to Sever Defendant, Dkt. No. 179, and ORDERS that the trial date be continued to May 4, 2026. Given Mr. Miller-Jimerson's counsel's representation at the Court's June 6, 2025 hearing that he would need a continuance to at least the current trial date if charges were re-instituted against Mr. Miller-Jimerson in a superseding indictment, Dkt. No. 144; Dkt. No. 194-1 at 3 (which they subsequently were, Dkt. No. 146), and given his speedy trial waiver consistent with that representation, Dkt. No. 164,[8] the period of delay from the date of Mr. Miller-Jimerson's arraignment on the fourth superseding indictment, Dkt. No. 163, to the new

---

[8] The Court notes that it previously had excluded time with respect to Mr. Miller-Jimerson until July 21, 2025, Dkt. No. 99, and he was arraigned on the fourth superseding indictment on July 8, 2025, Dkt. No. 163.

ORDER CONTINUING TRIAL AND DENYING MOTION TO SEVER DEFENDANT - 25

trial date is EXCLUDED pursuant to 18 U.S.C. § 3161(h)(7)(A) and (B) when computing the time within trial must commence under the Speedy Trial Act as to Mr. Miller-Jimerson. As to Mr. Hartfield, the period of delay from the date of this Order to the new trial date is EXCLUDED pursuant to 18 U.S.C. § 3161(h)(6) when computing the time within which Defendants' trial must commence under the Speedy Trial Act.

Any pretrial motions *related to discovery produced—or other events occurring—subsequent to this Order* must be filed by March 23, 2026. If the parties plan to present expert testimony, they must produce expert disclosures to the Court at the same time they produce such disclosures to the other parties, and must propose a date for a Daubert hearing at or before the pretrial conference (to be held April 22, 2025).

Finally, the Court reminds all parties that "counsel's arguments are not evidence," *United States v. Maldonado*, No. 24-6133, 2024 WL 5244829, at *4 (10th Cir. Dec. 30, 2024); if any motion or associated brief "requires the consideration of facts not appearing of record," the filing party must support those facts through "affidavits and photographic or documentary evidence presented in support of the motion," CrR 12; *see also United States v. Loo*, No. 24-CR-00072, Dkt. Nos. 46, 46-1 (W.D. Wash. May 23, 2025) (example of properly supported brief). The Court will not consider factual assertions in briefs that are not properly supported.

Dated this 14th day of October, 2025.

Lauren King
United States District Judge